U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**ENTERED**

TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET



**The following constitutes the ruling of the court and has the force and effect therein described.**

Signed June 22, 2010

**United States Bankruptcy Judge**

_____

| | | |
|---|---|---|
| **PAUL WESLEY ZIMMERLI and PATTIE ANN ZIMMERLI** § § § § | | |
| **Plaintiffs,** § | | |
| v. § | **Adversary No. 09-07003-hdh** | |
| **OCWEN LOAN SERVICING, LLC** § **Defendant.** § | | |

### MEMORANDUM OPINION ON MOTION TO COMPEL ARBITRATION AND DISMISS OR STAY PROCEEDINGS PENDING ARBITRATION

On January 24, 2009, Paul and Pattie Ann Zimmerli ("Plaintiffs") filed their Adversary Complaint (the "Adversary") against Ocwen Loan Servicing, LLC ("Ocwen"), alleging various causes of action, including automatic stay violations, contempt of court, negligence, misrepresentation, and violations of an agreed order regarding post-petition arrearage payments paid during their bankruptcy case and following a discharge entered in the Plaintiffs' bankruptcy case after their Chapter 13 plan was consummated. Over a year later, Ocwen filed its *Motion to Compel Arbitration and Dismiss or Stay Proceedings Pending Arbitration* (the "Motion"), based upon an arbitration agreement entered into between the Plaintiffs and Ocwen's predecessor in interest, Household Bank. A hearing was held on May 26, 2010, and the matter was taken under advisement. After consideration, the Court finds that the Motion should be denied.

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157, 1334 and the

standing order of reference in this district. The proceedings with respect to the Adversary are core pursuant to 28 U.S.C. § 157(b).

I. **Background Facts**

On April 3, 2002, Plaintiffs filed their Chapter 13 bankruptcy petition. Household Bank held the mortgage on the Plaintiff's home. The Chapter 13 Plan set out monthly amounts to be paid to the mortgagee. Household Bank subsequently transferred the mortgage to Fairbanks Capital Bank which later transferred the mortgage to Ocwen.

During the bankruptcy case, Ocwen filed a Motion to Lift Stay in order to foreclose on the Plaintiffs' home. Ocwen's motion was subsequently resolved through an Agreed Order, in which the parties stipulated that the Plaintiffs owed $2,701.80 in post-petition arrears and further that the Plaintiffs would resume regular mortgage payments on November 26, 2005. Plaintiffs allege in their Complaint that they paid the post-petition arrears in full and have faithfully paid their monthly mortgage payments. Plaintiffs received their bankruptcy discharge on January 3, 2007.

Despite the discharge, Plaintiffs allege that Ocwen continued to send to Plaintiffs notices of default in 2007, 2008, and 2009. Plaintiffs allege that their claims arise from the actions of Ocwen in seeking to collect principal and interest and various fees and escrow charges Ocwen claimed under the terms of the loan agreement. Ocwen did not dispute this description of its actions in its brief in support of the Motion.

Ocwen alleges that it discovered for the first time the arbitration agreement between Plaintiffs and Household Bank a few days before filing its brief in support of the Motion on April 5, 2010. Ocwen admits it only recently obtained the hard-copy loan origination files from Household Bank. The arbitration agreement provides that "any action, dispute, claim or

controversy of any kind whether contract or tort, statutory or common law, legal or equitable arising out of, pertaining to or in connection with the Mortgage…shall be resolved by arbitration in accordance with the following terms." (Docket No. 14, pages 2-3).

Ocwen requests that the Court enforce the arbitration agreement regarding Plaintiffs claims because the agreement is enforceable and the claims are subject to arbitration. Plaintiffs respond that the agreement is not enforceable and further that arbitration would conflict with the purposes of the Bankruptcy Code.

## II. Analysis

The Fifth Circuit has established a two-step analysis for determining whether parties must arbitrate claims: "First we must ask if the party has agreed to arbitrate the dispute…If so, we then ask if any federal statute or policy renders the claims non-arbitrable." <u>Sherer v. Green Tree Serv., LLC</u>, 548 F.3d 379, 381 (5th Cir. 2008) (citations omitted). The parties dispute whether the agreement to arbitrate is valid and enforceable.

### Is There an Enforceable Agreement to Arbitrate?

Plaintiffs raise as one of their arguments that the arbitration agreement is no longer a valid, enforceable agreement because Ocwen was not a party during its creation. They further argue that the agreement is lacking an "integral part" because the specified arbitrator, the National Arbitration Forum (the "NAF"), no longer exists. Ocwen responds that by possessing the mortgage it steps into the shoes and the terms and obligations remain the same; it also refutes the fact that the NAF must be the only entity to arbitrate. Both of Plaintiffs' arguments are appealing. However, the Court does not need to address these arguments because the claims primarily arise in bankruptcy and should be adjudicated in bankruptcy court. As a result, the Court assumes that

the Plaintiffs are bound by the valid and enforceable arbitration agreement.

## Are the Claims Arbitrable?

To address the second step of the <u>Sherer</u> analysis cited above in the context of a bankruptcy proceeding, the Fifth Circuit has established a two-part test for what a bankruptcy court should consider before abstaining from deciding a matter and deferring it to arbitration: "whether the proceeding derives exclusively from the provisions of the Bankruptcy Code and, if so, whether arbitration of the proceeding would conflict with the purposes of the Code." <u>Insurance Co. of North America v. NCG Settlement Trust & Asbestos Claims Mgmt. Corp. (In re Nat'l Gypsum Co.)</u>, 118 F.3d 1056, 1069-70 (5th Cir. 1997). Discretion is not absolute; there must first be an inherent conflict with the Bankruptcy Code that would jeopardize the objectives of the Bankruptcy Code and thus render the claims non-arbitrable. <u>In re Mirant Corp.</u>, 316 B.R. 234 (Bankr. N.D. Tex. 2004).

### A. The Adversary Constitutes a Core Proceeding

The first determination is whether the Proceeding derives exclusively from the provisions of the Bankruptcy Code, or in other words whether it is a core proceeding. A core proceeding is one that "arises under" or "arises in" a case under title 11. 28 U.S.C. § 1334(b). A non-core proceeding over which the Court has jurisdiction is a matter that would exist outside of the bankruptcy, but is "related to" a bankruptcy case. 28 U.S.C. § 1334(b).

The core versus non-core distinction determines whether the Bankruptcy court has discretion to enforce an arbitration agreement. This Court has discretion to refuse to enforce an otherwise valid and applicable arbitration agreement only if enforcing the agreement would conflict with a purpose or provision of the Bankruptcy Code. Case law highlights that "a

bankruptcy court has no discretion to refuse to compel the arbitration of matters not involving 'core' bankruptcy proceedings…" In re Gandy, 299 F.3d 489, 495 (5th Cir. 2002).

In considering the causes of action filed by the Plaintiffs, it is apparent that the adversary is a core proceeding.  The entire proceeding is evaluated as a whole to determine what is core and non-core, but each cause of action must be separately examined.  Trefny v. Bear Stearns Sec. Corp., 243 B.R. 300, 318 n.8 (S.D. Tex. 1999).

In the Adversary, the Plaintiffs list eleven causes of action, as follows:

1)  Violations of the Real Estate Settlement Procedures Act;

2)  Violations of the 11 U.S.C. § 362(a) Automatic Stay;

3)  Contempt of Court;

4)   Negligence;

5)  Gross Negligence;

6)  Fraudulent Misrepresentation;

7)  Negligent Misrepresentation;

8)  Violations of the Fair Debt Collections Act;

9)  Violations of Texas Financial Code Chapter 392;

10)  Unreasonable Collection Efforts; and

11) Improper & Unauthorized Fees in violation of Bankruptcy Rule 2016.

The automatic stay violation, contempt of court, and improper and unauthorized fees in violation of Bankruptcy Rule 2016 arise only in the context of a bankruptcy proceeding, because these claims would not exist outside of the Plaintiffs' Chapter 13 bankruptcy case.  The automatic stay violation can only arise in the bankruptcy context because the equitable relief does not exist

outside of bankruptcy proceedings.  The Federal Rules of Bankruptcy Procedure apply only in bankruptcy proceedings, so the Plaintiffs' cause of action asserting a violation of a bankruptcy rule is one that could arise only in the context of a bankruptcy proceeding.  Further, the contempt of court cause of action arises under the agreed order in the Plaintiffs' bankruptcy case and also concerns the Court's authority to order final relief.  The remedy is pursuant to the Court's sanction powers in 11 U.S.C. § 105.  Although it is true that non-bankruptcy courts can hold parties in contempt, this particular cause of action arises solely under the Chapter 13 case.

The bankruptcy court in In re Mirant, 316 B.R. at 238, noted that while the substance of the dispute may be governed by law peculiar to bankruptcy, the Nat'l Gypsum test does not require that the causes of action be derived solely from the Code.  It further noted that "[m]any issues in bankruptcy cases arise under state law but *must* be subject to the bankruptcy court's jurisdiction for it to do its job…"  In re Mirant, 316 B.R. at 238 (emphasis in original).  More of the causes of action may derive from state or federal law, but it is not simply a numbers game to determine whether the causes of action are derived exclusively from the Code.

To be sure, some of the Plaintiffs' causes of action do not arise under or arise in a bankruptcy case, such as violations of the Real Estate Settlement Procedures Act, the Fair Debt Collections Act, and the Texas Financial Code.  In addition, the Plaintiffs' causes of action for Negligence, Gross Negligence, Fraudulent Misrepresentation, and Negligent Misrepresentation arise under state law.  Although not every cause of action asserted by the Plaintiffs arises directly from the Bankruptcy Code or Rules, the thrust of the Adversary is that Ocwen violated bankruptcy rules and orders in its attempt to collect additional fees in violation of an agreed order, and in violation of the principle that parties must adhere to the automatic stay and the terms of a

Chapter 13 Plan upon confirmation.

Plaintiffs generally include a laundry-list of claims in a complaint to prevent waiver of claims based on mistake or neglect. Not every cause of action must arise under or in a bankruptcy case to keep the case in bankruptcy court. The critical factor is what causes of action dominate, while "some of the Debtor's remaining claims do involve her pre-petition legal or equitable rights, the bankruptcy cause of action predominate." In re Gandy, 299 F.3d at 497. The Fifth Circuit case law demonstrates that a bankruptcy court can exercise jurisdiction "if a post-confirmation dispute involves *implementation or execution of a confirmed plan or construction of a confirmed plan*. In re Burns, 2006 WL 2385252, *7 (Bankr. N.D. Tex. 2006) (emphasis in original).

In addition, the causes of action asserted in the Adversary are not related to the mortgage agreement between the Plaintiffs and Ocwen that arose pre-petition, but instead relate directly to the agreed order in the bankruptcy case. As another bankruptcy court has concluded: "the lawsuit exclusively seeks relief because of events that occurred during the administration of her bankruptcy case…[t]he cause of action has absolutely nothing to do with the construction of [the Debtor's] home or determining issues relative to the promissory note and deed of trust which she signed. The cause of action seeks a determination of whether the defendants complied with the Bankruptcy Code, the Bankruptcy Rules, and the order of this Court." Jones v. Walter Mortgage Co. (In re Jones), 2008 WL 49005473, *4 (Bankr. N.D. Miss. 2008). Similarly, the Adversary has nothing to do with the agreement between the Plaintiffs and Ocwen or whether the mortgage was violated, but instead alleges violations of the Bankruptcy Code and Rules for actions taken by Ocwen following the Plaintiffs' bankruptcy case. Thus, the Court finds that the bankruptcy

causes of action predominate and that the Adversary constitutes a core proceeding.

### B. Arbitration Would Conflict with the Purposes of the Bankruptcy Code

Determining that the bankruptcy cases of action predominate is not the end of the analysis. In re Gandy, 299 F.3d at 498. A bankruptcy court only has discretion to deny enforcement of the arbitration clause when it clearly conflicts with the purpose or of a provision of the Bankruptcy Code. Id. Purposes of the Bankruptcy Code include "the goal of centralized resolution of purely bankruptcy issues, the need to protect creditors and reorganizing debtors from piecemeal litigation, and the undisputed power of a bankruptcy court to enforce its own orders." In re Nat'l Gypsum, 118 F.3d at 1069. Centralized resolution of the predominate bankruptcy causes of action raised by Plaintiffs and the Court's power to ensure obedience to its own orders weigh in favor of denying enforcement of the Arbitration Agreement.

Moreover, the Court notes that no other state-court action or arbitration has commenced and the bankruptcy court is the only forum being employed by the parties to date. The Fifth Circuit in In re Nat'l Gypsum held that the fact that arbitration had not started yet weighed in favor of the bankruptcy court continuing jurisdiction. Id. at 1070. Because of this and given the passage of time after substantial consummation of the Chapter 13 Plan, the bankruptcy court's discretion was upheld. Id. In the same manner, several years have passed since the Plaintiffs were discharged from bankruptcy and the parties are not in the midst of an arbitration proceeding.

In the Court's opinion, enforcement of the arbitration agreement would inherently conflict with the underlying purposes of the Bankruptcy Code. The Court, therefore, will exercise its "significant discretion" to deny Ocwen's Motion. In re Gandy, 299 F.3d at 496.

Memorandum Opinion on Motion to Compel Arbitration

### III. Conclusion

Based on the foregoing, the Court finds that the causes of action asserted in the Adversary comprise a core proceeding and that enforcing the Arbitration Agreement would inherently conflict with the purpose and provisions of the Bankruptcy Code. Thus, the Court finds that it should exercise its discretion and deny the Motion.

### End of Memorandum Opinion ###